Mr. Chief Justice ShaRKey
delivered the opinion of the court.
The complainant filed this bill in the vice-chancery court, to enforce a mechanic’s lien. It is alleged, in the bill, that about the first of January, 1839, the complainant made a verbal contract with Bell and Conner, to do certain repairs and make certain improvements on a house in the town of Columbus, known as the Columbus Hotel, then in possession of Bell and Conner, under a lease from the Trustees of Franklin Academy. On this contract, suit was instituted within six months, as the statute requires, and judgment afterwards recovered, Bell and Conner in the mean time having sold out. Sundry executions were issued on the judgment, which were returned nulla bona. Ultimately an execution was placed in the hands of the sheriff, and he levied it on the house and lot, on which the work had been done, and sold it to the corqplainant, who received from the sheriff a deed. By an amended bill other parties are made defendants, as claiming an interest, but what that interest is, or how it was acquired, does not appear. The amended bill also contains an allegation, that the complainant acquired no title by his purchase at sheriff’s sale, but it does not state what the defect is. The prayer is, that the original lien may be enforced by a sale of the property. The vice chancellor dismissed the bill on demurrer, and correctly, as we think, for the following reasons :
We decided, in the case of Richardson v. Warwick, 7 How. 131, that after judgment on the contract, the plaintiff had two remedies; either he might resort to a special execution, and have the specific property sold, or he might waive that right, and sue out a general execution against all or any of the defendant’s property ; but that if he adopted the latter mode, he thereby abandoned his special lien. That decision was made under the act of 1840, but this case must be governed by the act of 1838. The statutes so nearly resemble each other in this particular feature, that the same principle will apply. By the act of 1840, the party was bound to have his contract recorded, or to institute suit within twelve months. On his judgment he was entitled to his special execution, or order for the sale of the *760 property, if he preferred that course. Under the act of 1838, when the contract was not in writing, suit was to be commenced within six months, and when judgment was recovered, the plaintiff might resort to a court of chancery to enforce his specific lien. 3 S. & M. 109. But if the plaintiff should think proper, under the act of 1838, to resort to a general execution on his judgment, as he undoubtedly had a right to do, it must be as much an abandonment of the special lien, as a similar course would be under the act of 1840. This the complainant did, and actually had the specific property sold, and became the purchaser. He now asks also to have his special lien enforced, on the ground that he acquired no title, but he fails altogether in showing any defect of title, unless we may infer such fact from the allegation that Bell and Conner sold before judgment. That averment, however, does not seem to have been framed with that view as it is contained in the original bill, whereas the allegation that he acquired no title is in the amended bill. The sale by Bell and Conner was mentioned doubtless as a circumstance, to authorize complainant to proceed against parties who might claim under them. But their sale might have been void as to creditors. For anything that appears, then, the complainant may have acquired a good title to the interest held by his debtors.
But there is an objection to the complainant’s right to relief, which is still more formidable. It is distinctly stated in the bill, that Bell and Conner had a “leasehold property from the Trustees of Franklin Academy.” When the lease commenced, or what was the term, does not appear. It is stated in another place, that Bell and Conner before the judgment, transferred and assigned all right and title which they had to the hotel, by which we can only understand that they assigned their term. The statute of 1838 was certainly never designed to authorize a tenant to incumber the freehold by liens of any description. It may have been that the lease commenced before the act was passed; if so, the legislature was as destitute of power to effect such an object, as it manifestly was of any such intention, to say nothing of the power to authorize such an incumbrance by *761 tenants on contracts made after the act. The act only contemplated the creation of such liens by the owner of the freehold, or at most, a tenant could only incumber his term. The truth is, the act does not give any lien for mere repairs; it only refers to a contract for the erection of buildings.
The decree is affirmed.